IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RYAN MILLSAP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| JOHN DA GROSA SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR APPOINTMENT OF RECEIVER IN AID OF
<u>ENFORCEMENT OF JUDGMENT</u>**

Plaintiff Ryan Millsap ("<u>Plaintiff</u>") files this Complaint against Defendant

John Da Grosa Smith ("<u>Defendant</u>"), respectfully alleging as follows:

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1332(a).

2.      Plaintiff Ryan Millsap is a citizen of the State of Georgia.

3.      Defendant John Da Grosa Smith has denied in sworn pleadings filed in

the Superior Court of Fulton County, Georgia, that he is a citizen of the State of

Georgia.

4.      Upon information and belief and based on Defendant's own sworn

assertions, Defendant is domiciled outside the State of Georgia and is therefore a

citizen of a state other than Georgia for purposes of diversity jurisdiction.

1

5. The amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiff holds a valid, final judgment against Defendant in excess of $4,000,000.00.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant has conducted business in this District, owns property in this District, and substantial events giving rise to this action occurred within this District.

## Background

7. This action seeks equitable relief in aid of enforcement of a final, non-appealable judgment.

### A. The Judgment.

8. Plaintiff (and a number of other parties related to him) holds a judgment against Defendant in the original amount of $1,500,000 in punitive damages, $2,226,008.90 in attorneys' fees, and nominal damages (the "Judgment"). With accrued interest, the total amount due and owing is more than $4,500,000.00.

9. The Judgment arises from an arbitration proceeding Plaintiff commenced against Defendant, who is a lawyer formerly representing Plaintiff and a number of his affiliates. Defendant had attempted to improperly extract tens of millions of dollars from Plaintiff and his affiliates by filing false attorneys' liens and otherwise delaying transactions involving Plaintiff and his affiliates. Defendant also

made demand on Plaintiff and his affiliates through counsel. These actions prompted Plaintiff and his affiliates to commence the arbitration through Judge Cynthia Wright, serving as a private arbitrator.

10. Ultimately, Plaintiff prevailed at arbitration, and Defendant failed on all of the claims he asserted. *See Smith v. Blackhall Real Estate LLC*, 373 Ga. App. 177, 182 (2024) ("At the conclusion of the hearing, the arbitrator issued a well-reasoned and comprehensive 66-page order finding Smith breached the contract and his fiduciary duty, and she ordered Smith to pay $1 in nominal damages, $1.5 million in punitive damages, and $2,226,008.90 in attorney fees."). A copy of the Arbitration Award is attached hereto as Exhibit A.

11. Judge Wright found that Defendant's conduct was "egregious, intentional, willful, and carried out with the specific intention to cause . . . harm [to Millsap, among others]", that he "sent false and threatening correspondence to third parties", and that he asserted a number of "meritless" positions. (*Id.*)

12. After entry of the Arbitration Award, Plaintiff and his affiliates sought to confirm the same in the Fulton County Superior Court through a confirmation proceeding. After substantial briefing, Judge Eaton of the Fulton Superior Court confirmed the arbitration award in its entirety. A true and correct copy of the order confirming the award ("Confirmation Order") is attached hereto as Exhibit B.

13.     Defendant appealed the Confirmation Order.  During the pendency of the appeal, Plaintiff filed a motion for a supersedeas bond.  Judge Benton of the Fulton Superior Court reviewed the record and entered an order requiring the posting of a supersedeas bond

14.     On appeal, the Court of Appeals of Georgia then affirmed the trial court decision **in its entirety**.  *See Blackhall, supra*.

15.     Defendant then filed a notice of intent to seek a writ of certiorari from the Supreme Court of Georgia.  He subsequently withdrew the same.

**B.     Defendant's Obfuscation**.

16.     Defendant is "litigious" under all definitions of that term.  Indeed, he has been a party to multiple appeals before the Georgia Court of Appeals: (i) Case No. A22A0429; (ii) Case No. A22A1505; (iii) Case No. A22A1506; (iv) Case No. A23A0651, and (v) Case No. A24A1144.  From all appearances, he has failed to succeed in any of the foregoing appeals.  Yet, a cursory review of those records reveals Defendant's generalized approach to litigation – resort to appellate processes even where no merit exists for the errors asserted.

17.     After Defendant withdrew his Notice of Intent to Seek Certiorari, Plaintiff filed his Affidavit seeking the issuance of a Writ of Fieri Facias, which was

4

granted.  A true and correct copy of the Writ of Fieri Facias is attached hereto as Exhibit C (the "FiFa").[1]

18.   At the same time, Plaintiff served post-judgment discovery on Defendant.

19.   Defendant responded to the discovery by refusing to produce a single document and refusing to substantively answer a single interrogatory.  Moreover, as has become Defendant's modus operandi, he threatened Plaintiff's lawyers with abusive litigation claims for seeking to collect the Judgment.  True and correct copies of the responses to post-judgment discovery and the abusive litigation letters are attached hereto as Exhibits D and E, respectively.

20.   Plaintiff filed a motion to compel responses to post-judgment discovery.  That motion remains pending.  A true and correct copy of that motion is attached hereto as Exhibit F.

21.   Plaintiff also issued several garnishments and subpoenas.  Once again, Defendant responded by objecting to all post-judgment efforts by Plaintiff and also threatened counsel and Plaintiff, again, on multiple occasions.   Defendant filed frivolous motions to quash every subpoena issued for post-judgment discovery, thus

---

[1]    The Fulton County Superior Court Clerk initially issued the FiFa with a scrivener's error as to Defendant's name.  It was subsequently corrected.

further delaying and hindering Plaintiff's efforts to discover Defendant's assets and their whereabouts.

22.    As of the date of this Complaint, Defendant has not provided any substantive post-judgment discovery responses and has attempted to block all third-party discovery efforts, all of which remain pending.

23.    Defendant engaged in other obstructionist conduct.  For example, Defendant and his counsel have made false and defamatory statements about Plaintiff and his counsel to a commercial lender to Plaintiff, which happens to also be a client of Plaintiff's counsel.

### C.    Defendant's Assets.

24.    Defendant sued his former lawyers who represented him in connection with the matters giving rise to the Arbitration Award and subsequent litigation. According to his allegations, he sustained millions in dollars in damages – the amount of the Judgment plus substantial additional damages.  *See, generally, Smith v. Wood Smith Henning & Berman LLP*, Case No. 2023CV377879, Superior Court of Fulton County, Georgia ("JDS Malpractice Action").

25.    As of late April 2025, Defendant settled his claims against a number of the defendants in the JDS Malpractice Action, including those that appear to be the most involved (the "JDS Settlement").  In connection therewith, the parties there

6

filed a consent motion to dismiss those defendants once payment of the settlement funds was made.  *See* Consent Motion to Dismiss Less Than All Parties, attached hereto and incorporated herein as Exhibit G.

26.     Plaintiff also filed that certain Garnishment Action styled *Millsap v. Smith*, Case No. 25GR000091, which sought to garnish funds that may be held by Defendant's attorneys handling the JDS Litigation, Watson Spence LLP ("WS LLP").  When Plaintiff attempted to serve the garnishment on WS LLP, the process server was refused entry to its officers, and WS LLP did not make anyone else available to receive service.  Plaintiff – through counsel – then sought to have the managing partner of WS LLP accept service of the garnishment summons, and such attempt did not receive a response.  A true and correct copy of this correspondence is attached hereto as Exhibit H.

27.     Plaintiff also filed a garnishment action against Hawkins Parnell LLP ("HP"), counsel to certain of the defendants in the JDS Litigation, seeking any funds that may be owed to Defendant and held for his benefit.  HP responded that it was not holding any funds due and owing to Defendant and the garnishment was therefore dismissed.

28.     Plaintiff also sought to work directly with Defendant – through counsel – to resolve the Judgment given that Defendant had received what appeared to be a

significant settlement.  A true and correct copy of this correspondence is attached hereto as Exhibit I.  Plaintiff did not receive a response to this correspondence.

29.     Defendant owns a condominium in Atlanta with an address of 222 12th Street, Unit 1806, Atlanta, Georgia 30309 (the "Atlanta Property").  The Property holds a value in excess of $1 million.  Defendant also owns real property in Philadelphia, Pennsylvania, at address 1414 S. Penn Square, Unit 7D, Philadelphia, Pennsylvania ("PA Property").

30.     In connection with the JDS Settlement, on May 1, 2025, Defendant placed the Atlanta Property for sale.  In an effort to ensure a swift sale, Defendant lowered the asking price for the Property quickly after listing it for sale.

31.     Defendant also demanded that the FiFa be removed, again under repeated threats to counsel and Plaintiff notwithstanding that Plaintiff held a judgment that was fully affirmed on appeal.  Defendant's aim was clear – to sell and abscond with all of his assets that could be used to satisfy the Judgment.

**D.     Receivership Action.**

32.     In June 2025, given Defendant's positions, Plaintiff filed an action seeking the appointment of a receiver, styled *Millsap v. Smith*, Fulton County Superior Court, Case No. 25cv007000 ("Receivership Case").

33.    Defendant sought to delay the emergency hearing set by the trial court in the Receivership Case ("Receivership Court") due to personal reasons of counsel. Plaintiff consented to a continuance, but conditioned the consent on Defendant agreeing not to transfer any assets pending the hearing.  Defendant refused to consent to Plaintiff's reasonable request, and thus the hearing was not continued by consent.

34.    In June 2025, the Receivership Court held a hearing on Plaintiff's request for the appointment of a receiver.  Shortly after the conclusion of that hearing, the Receivership Court entered an order overruling all of Defendant's various meritless objections, confirming that the Judgment is valid and enforceable, and granted the motion to appoint a receiver (the "Receivership Order"). The Receivership Order applies to all assets of Defendant.  It further provides that the Court would by separate order identify the receiver and set out the terms and conditions of the receiver's appointment.    A true and correct copy of the Receivership Order is attached hereto as Exhibit J.

35.    Notwithstanding that Defendant has taken the position that the Receivership Order ***does not*** appoint a receiver, Defendant filed a notice of appeal. That notice of appeal has stalled the Receivership Court in taking action with respect to the Receivership Order.

9

36.     Defendant has also filed various motions seeking to litigate issues that have been fully resolved, including a motion contesting counsel's ability to represent various parties, a motion to set aside a judgment, and has taken the position that the Judgment is not valid or effective.  The state courts in Georgia have rejected each of these positions time and again.  Accordingly, these motions are sanctionable, for among other reasons they have been adjudicated with finality by the various courts reviewing these issues and they were imposed for the purpose of continued delay.

37.     Defendant – with the aid of his counsel and in violation of the Receivership Order – entered a contract to sell the Atlanta Property.  Rather than comply with the provisions of the Receivership Order, Defendant and his counsel continuously threatened Plaintiff and his counsel regarding the attempts to sell the Atlanta Property.  Through their actions, Defendant and counsel confirm their lack of intent to follow Orders, thus making collecting the Judgment more difficult.

38.     On the eve of a hearing on various post-judgment discovery issues, Defendant also filed a motion to recuse the Receivership Court, which further delayed the pending matters ("Motion to Recuse").  Judge Cox by designation heard the motion to recuse, which he summarily denied.  Nonetheless, Defendant sought to appeal that decision, again for further delay, which the Court of Appeals also summarily denied.

39.     In connection with the Motion to Recuse, Defendant retained additional counsel – Stacey Evans ("Evans") – who happens to serve in the Georgia legislature. Predictably, when the matter returned to the trial court after the Motion to Recuse litigation, and the trial court began scheduling a hearing, Evans filed a substantial leave of absence given her status as a legislator (notably, Evans represented to the trial court on numerous times that she was retained to handle the Motion to Recuse but is now using her status as a legislator to delay the balance of the matters, even though the Motion to Recuse has been fully adjudicated).

40.     Judge Williams, previously assigned as the Receivership Court judge, has since resigned, leaving the Receivership Case with no judge until her replacement is appointed.

41.     As of the date of this Complaint, the only monies collected against the Judgment – despite Defendant having millions of dollars at his access – resulted from a garnishment that recovered approximately $750.00.  Notably, Defendant was served with that garnishment and did not respond; accordingly, under Georgia law, he has judicially admitted that the Judgment is final and valid.

## COUNT I: APPOINTMENT OF A RECEIVER

42.     Plaintiff incorporates paragraphs 1 through 41 as if set forth herein.

43.    Plaintiff holds a final, valid Judgment against Defendant in an amount that exceeds $4,000,000.00, which encumbers Defendant's assets.

44.    The Judgment remains unsatisfied despite Plaintiff's attempts to collect the same.

45.    Plaintiff is entitled to the appointment of a receiver in aid of execution on the Judgment, pursuant to Fed. R. Civ. P. 66 and 69, to marshal, preserve, protect, and, if necessary, liquidate Defendant's non-exempt assets and personal property, including, without limitation, Defendant's interests in real property (wherever located), personal property, bank accounts, accounts, instruments, rights to payment, choses in action, contract rights, general intangibles, and all other assets that may be used to satisfy the Judgment (collectively, the "Assets"), in light of Defendant's demonstrated resistance to collection efforts and obstruction of lawful execution proceedings. *See Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("A receiver may be appointed to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment.") (internal citation and quotation omitted).

46.    Defendant has engaged in conduct designed to delay, hinder, and frustrate Plaintiff's lawful enforcement efforts.

47. Defendant has resisted garnishment efforts and other lawful collection mechanisms and has taken positions intended to obstruct Plaintiff's ability to levy on and liquidate assets.

48. Defendant has demonstrated unwillingness to voluntarily sell or liquidate assets that could be used to satisfy the Judgment.

49. Defendant's liabilities substantially exceed his readily available liquid assets, and he has failed to make any voluntary payment toward the Judgment.

50. Defendant's conduct has made impracticable and futile ordinary execution efforts and has obstructed Plaintiff's ability to levy on and liquidate personal property.

51. By failing or refusing to cooperate with lawful enforcement efforts and by asserting jurisdictional barriers to the reach of state court remedies, Defendant is hindering and delaying Plaintiff's collection of the Judgment.

52. Defendant has attempted to relitigate settled issues at each pass, and while doing so has simultaneously failed to post a supersedeas bond.

53. The appointment of a receiver is necessary to marshal Defendant's Assets and to preserve, protect, and, if appropriate, dispose of such Assets for the benefit of Plaintiff as a judgment creditor and for the protection of any other parties asserting legitimate interests in such Assets.

54.     There is manifest danger of loss, waste, dissipation, or material injury to the Assets if a receiver is not appointed to manage, marshal, and protect them.

55.     Plaintiff does not have an adequate remedy at law and will be irreparably harmed if this Court does not exercise its equitable powers under Federal Rule of Civil Procedure 66 to appoint a receiver to marshal, preserve, protect, and, if necessary, liquidate the Assets.

56.     The appointment of a receiver is the most efficient and equitable method to ensure that the Assets are properly preserved, liquidated in an orderly manner, and applied toward reduction of the Judgment, particularly given that the Assets are located in multiple states, including the Atlanta Property and the PA Property – a circumstance Defendant has repeatedly highlighted in contesting Plaintiff's state-court efforts.   Moreover, a receiver will have the power to investigate the whereabouts of Defendant's assets, including investigating those persons who have conspired with Defendant to secret his assets.

57.     Declining to appoint a receiver will result in continued delay, potential dissipation of Assets, and further frustration of Plaintiff's ability to collect on the Judgment.

58.     The receiver should be vested with authority to:

    (a)     marshal, take possession of, and control of Defendant's non-exempt Assets wherever located;

14

    (b)     segregate, preserve, protect, and account for all Assets and prevent their waste or dissipation;

    (c)     investigate and identify all Assets owned or controlled by Defendant or those previously owned or controlled by Defendant that may be recovered to satisfy the Judgment;

    (d)     manage, market, and, subject to further order of this Court, sell Assets free and clear of liens and interests, with valid liens to attach to proceeds in the same priority and order as existed against the Assets;

    (e)     collect, compromise, or otherwise realize upon rights to payment and other intangibles;

    (f)     Investigate and, if necessary, bring actions against individuals or entities assisting Defendant in hiding or secreting or transferring his assets; and

    (f)     take any and all actions reasonable and necessary to maximize proceeds to apply toward satisfaction of the Judgment.

56. Tyler Wright, with Moore Colson CPAs and Advisors was proposed as the receiver in the Receivership Act. He has expressed willingness to serve as receiver subject to entry of an appropriate order of this Court. A true and correct copy of his c.v. is attached hereto as Exhibit K.

57. The proposed receiver is disinterested and possesses the requisite skills, experience, and expertise necessary to perform the duties of a receiver in this matter.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Appoint a receiver over Defendant's non-exempt Assets, wherever located;

B.      Grant the receiver the authority set forth above;

C.      Award costs and expenses associated with the receivership; and

D.      Grant such other and further relief as this Court deems just and equitable.

Dated: March 23, 2026.

Respectfully submitted,

/s/ Garrett A. Nail
Garrett A. Nail
Georgia Bar No. 997924
PORTNOY GARNER & NAIL LLC
49 Park Square Court
Roswell, Georgia 30075
404-688-8800
gnail@pgnlaw.com

*Attorneys for Plaintiff*

16

## CERTIFICATE OF FONT COMPLIANCE

The undersigned counsel hereby certifies that the foregoing has been prepared with the font and point selections approved by the Court in Local Rule 5.1.  It is prepared in Times New Roman 14 point.

This 23rd day of March 2026.

        /s/ Garrett A. Nail
GARRETT A. NAIL
Georgia State Bar No. 997924